**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KELLY L. NIEDING, ) | |
| ) | CASE NO. 3:13-cv-00666 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JACK ZOUHARY |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Kelly L. Nieding ("Nieding") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability, Disability Insurance benefits, and Supplemental Security Income under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I. Procedural History**

On February 29, 2008, Nieding filed an application for POD, DIB and SSI alleging a disability onset date of January 22, 2008. Nieding's application was denied initially and upon reconsideration. After conducting a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on October 30, 2009. However, the Appeals Council ordered a remand on May 3, 2011. (Tr. 10.)

On January 24, 2012, another ALJ held a hearing during which Nieding, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") all testified. (Tr. 10.) On

February 23, 2012, the ALJ found Nieding was able to perform a significant number of jobs in the national economy, and therefore, was not disabled. (Tr. 20-22.) The ALJ's decision became the final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-one (41) at the time of her administrative hearing, Nieding is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). She has a high school education and past relevant work as a cashier, dishwasher, merchandiser, and utility worker/automobile assembler. (Tr. 20.)

*Relevant Medical Evidence*[1]

T. Arthur-Mensah, M.D., a psychiatrist, treated Nieding on three occasions. During her first office visit on March 30, 2011, Nieding told Dr. Arthur-Mensah that she cried a lot, had frequent panic attacks; lost her temper "at the drop of a dime;" and, was previously diagnosed with bipolar disorder, panic disorder, and anxiety. (Tr. 796.) She had a hard time leaving the house and was recently fired for grabbing a co-worker by the throat. *Id*. She denied having prior psychiatric hospitalizations, but stated she had attempted suicide by overdosing on drugs. *Id*. She claimed that she sometimes heard voices, punched walls, experienced racing thoughts, and decreased concentration and energy. (Tr. 796-97.) Dr. Arthur-Mensah diagnosed major depressive disorder with psychotic features and panic disorder with agoraphobia. (Tr. 797.) He ruled out bipolar disorder. *Id*. Nieding was prescribed Lexapro, Seroquel, and Klonopin. *Id*.

Less than a week later, on April 5, 2011, Nieding informed Dr. Arthur-Mensah that she was facing eviction from her residence, was having conflicts with her family, and was unable to tolerate Seroquel due to constant crying. (Tr. 795.) She felt overwhelmed and hopeless. *Id*. She claimed to be experiencing heavy diarrhea from Lexapro, and was still hearing voices. *Id*.

---

[1] As the ALJ's non-compliance with the treating physician rule is dispositive, discussed *infra*, the Court's recitation of the facts is limited to the treatment rendered by T. Arthur Mensah, M.D.

Dr. Arthur-Mensah discontinued Seroquel but renewed Nieding's other psychiatric medications. *Id*. (Tr. 795.)

On April 19, 2011, Nieding told Dr. Arthur-Mensah that she was homeless and living in a motel room that was being paid for by a church. (Tr. 794.) She again reported auditory hallucinations but denied suicidal ideation. *Id*. Dr. Arthur-Mensah noted that Nieding had a depressed mood and tearful affect, but was tolerating her medications well. *Id*. She was prescribed Klonopin, Abilify, and the dosage of Lexapro was increased. *Id*.

On May 5, 2011, Dr. Arthur-Mensah completed a psychological questionnaire. (Tr. 798-99.) He indicated that Nieding suffered from major depressive disorder, recurrent, with psychotic features and panic disorder with agoraphobia. (Tr. 798.) Nieding's symptoms included persistently dysphoric moods, irritability and easy agitation, panic attacks, auditory hallucinations, and paranoia. *Id*. Dr. Arthur-Mensah believed Nieding could not sustain regular employment at the time. *Id*. He further opined that Nieding was significantly limited in both her ability to get along with coworkers, supervisors, and the public and in her ability to respond appropriately to work pressures in a usual work setting, including decision making, attendance, and maintaining a schedule. (Tr. 799.) Dr. Arthur-Mensah also offered that Nieding's symptoms would interfere with her ability to maintain attention and concentration necessary to perform simple tasks on a daily basis. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Nieding was insured on her alleged disability onset date, January 22, 2008, and remained insured through the date of the ALJ's decision, February 23, 2012. (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Nieding must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Nieding established medically determinable, severe impairments, due to degenerative disc disease, obesity, anxiety with panic disorder, bipolar disorder, depression, personality disorder, substance addiction disorder, and fibromyalgia. (Tr. 13.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Nieding was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 15, 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Nieding was not disabled.

---

activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

**V. Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Psychiatrist*

Nieding argues the ALJ erred by failing to follow the treating physician rule and ascribing only little weight to the opinions of her treating psychiatrist, Dr. Arthur-Mensah. (ECF No. 13 at 17-19.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the

factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]

If it is determined that a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health &*

---

[3] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

*Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The ALJ assigned little weight to the opinion of Dr. Arthur-Mensah. (Tr. 19.) After summarizing the limitations Dr. Arthur-Mensah ascribed to Nieding, the ALJ noted that the psychiatrist saw Nieding for the first time less than two months before his opinion was given. (Tr. 19.) In addition, the ALJ observed that Dr. Arthur-Mensah's opinion of Nieding's symptoms was "much more severe than the remainder of the medical records evidence." *Id*.

Although the ALJ did not clearly identify Dr. Arthur-Mensah as a treating physician, the Commissioner does not argue that Nieding's relationship with Dr. Arthur-Mensah, even if of relatively short duration, did not qualify as treating. In fact, the Commissioner's brief acknowledges that Dr. Arthur-Mensah was a "treating physician."[4] (ECF No. 16 at 19.) With respect to Dr. Arthur-Mensah's opinion, the Court finds the ALJ failed to provide "good

---

[4] While the Court presumes for the purposes of this review that Dr. Arthur-Mensah's limited course of treatment was sufficient to establish a treating relationship, this should not be construed as a factual finding as the matter is not in dispute. It bears noting that the level of "treatment" rendered herein does not axiomatically establish a treatment relationship pursuant to the regulations and case law. *See* 20 C.F.R. § 404.1502 ("we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)); *Smith v. Astrue*, 2012 U.S. Dist. LEXIS 37203 at *18 (N.D. Ohio Mar. 20, 2012) ("Two psychiatric visits only one month apart were insufficient to establish a treating relationship, as it is not a frequency consistent with the longitudinal nature of psychiatric treatment.")

reasons" for rejecting it. The ALJ does not appear to have considered the factors set forth in 20 C.F.R. § 404.1527(c)(2), or at least did not sufficiently explain how those factors weighed against assigning great weight to Dr. Arthur-Mensah's opinion. While the ALJ made passing reference to the limited duration of the course of treatment, this minimal level of articulation simply deprives the Court of the ability to conduct a meaningful review. Furthermore, concluding that Dr. Arthur-Mensah's opinion as to Nieding's symptoms was "much more severe than the remainder of the medical records evidence" is also insufficient. Courts have routinely found that such a perfunctory assessment does not constitute "good reasons" for rejecting a treating physician's opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245–46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source 's opinion where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations); *Patterson v. Astrue*, 2010 WL 2232309 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance."); *Fuston v. Comm'r of Soc. Sec.*, 2012 WL 1413097 (S.D. Ohio Apr. 23, 2012) (finding the ALJ deprived the court of meaningful review where the ALJ discarded a treating physician's opinion without identifying any contradictory evidence or explaining which findings were unsupported).

Even reading the opinion as a whole, the ALJ does not point to any psychiatric treatment records that conflict with Dr. Arthur-Mensah's opinion. In fact, the only other pieces of psychiatric evidence discussed by the ALJ come from a consultative examiner and the ME. This Court has previously ruled that an ALJ cannot base his or her rejection of a treating physician's opinion upon its inconsistency with the opinions of non-treating physicians. *See Brewer v. Astrue*, 2011 WL 2461341 at *7 (N.D. Ohio Jun. 17, 2011) ("To do so would turn the treating physician rule on its head [as] [i]t is well established that the opinions of non-examining physicians carry little weight when they are contrary to the opinion of a treating physician."); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th 2013) ("Surely the conflicting

substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.")

Finally, the Commissioner also asserts that the ALJ properly rejected Dr. Arthur-Mensah's opinion as to Nieding's limitations because: (1) it is not supported by his own treatment notes; and, (2) it is based largely on Nieding's subjective complaints. (ECF No. 16 at 19.) The Court declines to consider these arguments as they constitute a *post hoc* rationale that was not set forth in the ALJ's decision.[5]

The Court finds that the ALJ erred by not giving good reasons for rejecting the limitations assessed by Nieding's treating physician, Dr. Arthur-Mensah. Nieding's remaining assignments of error are rendered moot and will not be addressed in the interests of judicial economy.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be

---

[5] Defense counsel's argument cannot be substituted for the reasons actually offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White<br>United States Magistrate Judge

Date: December 20, 2013

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**